**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION (WORCESTER)**

| | | |
|---|---|---|
| RICHARD STEWART, on behalf of Plaintiff and the class members described herein, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 4:22-cv-40091-LTS |
| v. | ) ) | Hon. Leo T. Sorokin |
| GREEN ARROW SOLUTIONS, d/b/a GREEN ARROW LOANS; INTEGRA FINANCIAL SERVICES, LLC; NEVADA IMPACT MANAGEMENT, LLC; DAN SHAW; GREG JONES; JOHN DOES 1-10, | ) ) ) ) ) ) ) | Leave to File Granted on October 18, 2022

DEMAND FOR TRIAL BY JURY |
| Defendants. | ) ) | |

**AMENDED COMPLAINT – CLASS ACTION**

1.      Plaintiff, Richard Stewart, brings this action against Defendants (a) Green Arrow Solutions, d/b/a Green Arrow Loans, (b) Integra Financial Services, LLC, (c) Nevada Impact Management, LLC, (d) Dan Shaw, (e) Greg Jones, and (f) John Does 1-20 to secure redress for usurious and illegal loans (such as Exhibit A) made to Massachusetts residents.

2.      Plaintiff seeks relief under the Massachusetts Small Loans Act, Mass. G. L., Ch. 140, § 96 *et seq.* (Count I), Mass. G. L., Ch. 93A, §§ 2, 9 (Count II), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Count III).

**JURISDICTION AND VENUE**

3.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Jurisdiction may also exist under 28 U.S.C. § 1332(d), in that the amount in controversy on a classwide basis exceeds $5 million, exclusive of interest and costs, and in that there are believed to be over 100 members of the class, all of whom are of diverse citizenship to Defendants.

4.      This Court has personal jurisdiction over each Defendant because they knowingly

participated in the making of unlawful loans to Massachusetts residents.

5.      Venue is proper because acts to collect the loans impacted Plaintiff in the District of Massachusetts.

6.      As set forth below, Defendants operate interactive websites through which they sought to and did make loans to Massachusetts residents. The use of an interactive website which permits Massachusetts residents (but not residents of specified other states) to apply for loans, along with the making and collecting of loans within the state, establishes a purposeful availment of Massachusetts and is sufficient to establish personal jurisdiction over the defendants responsible for the site. *Toys "R" Us, Inc., v. Step Two*, 318 F.3d 446, 454 (3rd Cir. 2003).

7.      Article III is satisfied because actions for usury, including reduction or voiding of loans and statutory damages, were entertained by courts in the United Kingdom (Usury Act of 1713, 12 Anne s. 2 c. 17) and all of the original states in 1789. Plaintiff is a party to a usurious loan, suffered financial injury as a result, and is threatened with additional financial injury. The class members are also parties to usurious loans.

## PARTIES

8.      Plaintiff Richard Stewart is a natural person who at all times relevant has resided in Athol, Worcester County, Massachusetts.

9.      Defendant Green Arrow Solutions purports to be an entity created and owned by the Big Valley Band of Pomo Indians of the Big Valley Rancheria (the "Tribe"). (Exhibit A) As set forth below, Green Arrow Solutions is not owned by the Tribe.

10.      Green Arrow Solutions does business as Green Arrow Loans via the website, www.GreenArrowLoans.com.

11.      At no time was Green Arrow Solutions licensed to conduct a lending business by the Commonwealth of Massachusetts.

12.      At no time has Green Arrow Solutions had a bank or credit union charter.

13.      At no time was Green Arrow Solutions authorized by the Massachusetts Attorney

General to charge, take, or receive, directly or indirectly, interest at an APR exceeding 20%.

14.     Defendant Integra Financial Services, LLC ("Integra") is a limited liability company organized under Nevada law. It uses the address 1759 N. 400 East, Suite 202, North Logan, Utah. Its registered agent and office is Registered Agent Inc., 401 Ryland St., Ste. 200-A, Reno, NV 89502. It has a single managing member, Nevada Impact Management, LLC.

15.     Defendant Nevada Impact Management, LLC ("Impact") is a limited liability company organized under Nevada law. Its registered agent and office is Registered Agent Inc., 401 Ryland St., Ste. 200-A, Reno, NV 89502.

16.     Impact has two managers, Dan K. Shaw ("Shaw") and Gregory Jones ("Jones"), both of 2520 St. Rose Pkwy., Suite 111, Henderson, NV 89074.

17.     Shaw and Jones are named as Defendants herein.

18.     Both Integra and Impact are run by Defendants Dan Shaw and Greg Jones.

19.     Impact also is manager of a company, Loan Trax LLC, also located at 1759 N. 400 E Suite 202, North Logan, UT 84341.

20.     On information and belief, Shaw and Jones formed Integra in July 2011 for the purposes of acquiring substantially all of the assets of Impact Payment Systems, LLC, an Internet lender.

21.     Impact Payment Systems, LLC had been sued by the SEC in March 2011. The SEC alleged that it was a Ponzi scheme which raised $47 million to lend.

22.     On April 3, 2012, Integra moved to terminate the receivership of Impact, having acquired its assets and operations.

23.     In about 2014, Shaw, Jones, Integra, and Impact created Green Arrow Solutions and www.GreenArrowLoans.com to continue to conduct a high-interest Internet loan business.

24.     Defendants Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw, and Greg Jones work in concert to make and collect usurious and illegal loans.

25.     Shaw and Jones are the true operators and beneficiaries of

www.GreenArrowLoans.com.

26.     Shaw and Jones are not members of the Tribe.

27.     Green Arrow Solutions make loans to consumers at more than 700%. (Exhibit C)

28.     Green Arrow Solutions states on its website that "We do not always lend in every state. Our states of operation change frequently; please check back periodically to see if we are doing business in your state. We do not currently offer loans to customers in Arkansas, Colorado, Connecticut, Georgia, Maryland, Minnesota, Montana, New Hampshire, New York, North Carolina, Pennsylvania, Puerto Rico, Virginia, Vermont, Washington, West Virginia."

29.     On information and belief, the list of states in which Defendants do not make loans depends on the likelihood they will face public or private enforcement actions.

30.     The business operations of Green Arrow Solutions, including incoming and outgoing phone calls and emails, review of loan applications, underwriting, payment processing, website maintenance, and marketing, are not conducted on the Tribe's lands. On information and belief, they are conducted in North Logan, Utah, for the benefit of persons who are not members of the Tribe.

31.     The "hours of operation" on www.GreenArrowLoans.com are listed as "Monday - Thursday: 7:00 AM to 7:00 PM MST. Friday: 7:00 AM to 5:00 PM MST." The Tribe is in the Pacific time zone. Utah is in the Mountain time zone.

32.     Green Arrow Solution's website is hosted in Los Angeles. (Exhibit B)

33.     A number of other internet lenders also claim to be owned or operated by the Tribe, including:

        a.      Big Valley Financial (www.bigvalleyfinancial.com);

        b.      Golden Gate Funding (www.goldengatefunding.com);

        c.      Tremont Lending (www.tremontlendingloans.com);

        d.      Little Lake Lending (www.littlelakelending.com);

        e.      Condor Credit (www.condorcredit.com).

34.     John Does 1-20 are other natural or artificial persons who participated in the Internet lending scheme complained of herein.

## FACTS RELATING TO INTERNET LENDING BUSINESS

35.     Shaw, Jones and others developed a plan to make illegal high-interest loans over the Internet, while evading liability for such loans by claiming that the lending operation is owned by a Tribe that enjoys sovereign immunity.

36.     While Green Arrow Solutions purports to be a tribal entity, it is not.

37.     The actual lending operations were carried out and continue to be carried out in locations other than tribal lands.

38.     No member of the Tribe participates in significant lending operations.

39.     On information and belief, the principal economic benefit of the lending activities are received by non-members of the Tribe.

40.     The capital sources used to fund the loans complained of herein originate from non-tribal persons and entities.

41.     The funds lent are transferred by ACH credit to the borrowers' bank accounts throughout the United States.

42.     Repayment of the loans is made by ACH debit from the borrowers' bank accounts throughout the United States.

## SOVEREIGN IMMUNITY AS A DEFENSE TO STATE USURY LAWS

43.     An entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

44.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to

have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

45.     An entity that "actually operates to enrich primarily persons outside the tribe or only a handful of tribal leaders" shows that it is not entitled to immunity. *People ex rel. Owen v. Miami Nation Enterprises*, 2 Cal. 5th 222, 211 Cal. Rptr. 3d 837, 386 P.3d 357 (2016).

46.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

47.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

48.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

49.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## DEFENDANTS' LOANS

50.    Green Arrow Solutions uses its website, www.GreenArrowLoans.com, to make loans to consumers at interest rates in excess of 700% annually. (Exhibit A)

51.    Green Arrow Solutions has made several loans to Plaintiff, all at such rates, and all in excess of the maximum rate permitted in Massachusetts.

52.    The most recent loan was made on June 16-17, 2022, in the amount of $500, at over 750% interest (Exhibit A).

53.    The loan would result in repayment of $1,701.64 if paid every two weeks for four months. The total interest charged would be $1,201.64.

54.    Plaintiff has made payments on the loan memorialized in Exhibit A.

55.    Defendants claim amounts are still owed on the loan.

56.    The loan agreement (Exhibit A) is a standard form.

57.    The prior loans had similar rates.

58.    The loans were made for personal purposes and not for business purposes.

59.    The principal amount of each loan was transferred to Plaintiff's bank account in Massachusetts via ACH.

60.    The loans were made entirely via the Internet.

61.    The loans were to be repaid via ACH. The loans prior to Exhibit A were so repaid.

62.    Defendants' lending activities do not actually occur on the Tribe's reservation.

63.    A significant majority of the transaction occurs within the State of Massachusetts – applying for the loan and receiving and collecting the funds.

64.    The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not

protected by IGRA.").

65.    Plaintiff has never set foot on the Tribe's land.

66.    Loans to Massachusetts residents made in the same manner as the loans to Plaintiff are governed by the laws of Massachusetts.

67.    All Defendants knowingly profited from the usurious lending activities complained of herein.

## MASSACHUSETTS REGULATION OF LENDING

68.    Massachusetts caps interest at 12% on a loan for personal, family or household purposes by an unlicensed lender. Mass. G. L., Ch. 140, § 96 provides:

> Section 96. No person shall directly or indirectly engage in the business of making loans of six thousand dollars or less, if the amount to be paid on any such loan for interest and expenses exceeds in the aggregate an amount equivalent to twelve per cent per annum upon the sum loaned, without first obtaining from the commissioner of banks, in sections ninety-six to one hundred and fourteen, inclusive, called the commissioner, a license to carry on the said business in the town where the business is to be transacted. When an application for a loan or for an endorsement or guarantee or for the purchase of a note is made by any person within this commonwealth, and the money is advanced or the endorsement or guarantee is made or furnished by any person without this commonwealth, the transaction shall be deemed a loan made within this commonwealth, and such a loan and the parties making it shall be subject to sections ninety-six to one hundred and thirteen, inclusive. The buying or endorsing of notes or the furnishing of guarantee or security for compensation shall be considered as engaging in the business of making small loans within said sections, but the foregoing provisions of this sentence shall not apply in the case of any transaction which involves any note or other instrument evidencing the indebtedness of a buyer to the seller of goods, services or insurance for a part or all of the purchase price; provided, however, that any advance of money by such seller or, by a person acting on his behalf for the purpose of paying an existing indebtedness of such buyer or for any other purpose shall constitute a loan of money subject to the provisions of this section. For the purposes of said sections, the amount to be paid upon any loan of six thousand dollars or less for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan, and shall include all such sums when paid by or on behalf of or charged against the borrower for or on account of making or securing the loan, directly or indirectly, to or by any person, other than the lender, if such payment or charge was known to the lender at the time of making the loan, or might have been ascertained by reasonable inquiry. Any person directly or indirectly engaging, for a fee, commission, bonus or other consideration, in the business of negotiating, arranging, aiding or assisting the borrower or lender in procuring or making loans of six thousand dollars or less, for which the amount paid or to be paid for interest and expenses, including all amounts paid or to be paid to any other party therefor, exceeds in the aggregate an amount equivalent to twelve per cent per annum, whether such loans are actually made by such

person or by another party, shall be deemed to be engaged in the business of making small loans, and shall be subject to sections ninety-six to one hundred and twelve, inclusive. If, after all deductions or payments, whether on account of interest, expenses or principal made substantially contemporaneously with the making of the loan, the amount retained by the borrower be six thousand dollars or less, the transaction shall be deemed to be a loan in the amount of the sum so retained by the borrower after such deductions or payments, notwithstanding that the loan be nominally for a greater sum.

This section shall not apply to loans that are subject to section 90A or section 28B of chapter 183.

The provisions of this section and sections ninety-six A to one hundred and fourteen A, inclusive, shall apply only to loans made primarily for personal, family or household purpose; provided, however, that the provisions of this section and said sections ninety-six A to one hundred and fourteen, inclusive, shall not apply to loans to any student, or to any parent, legal guardian or sponsor of a student, made by any nonprofit, public or independent post-secondary educational institution within the commonwealth authorized by law to grant degrees, by the commonweath or by any agency or instrumentality thereof; and provided, further, that such institutions may not take, receive, reserve, or charge interest, expenses and other consideration for making or securing a loan of six thousand dollars or less in excess of those permitted by section one hundred, except in the event of prepayment or refinancing, in whole or in part, of any existing loans by such institution to any such student, or to any such parent, legal guardian or sponsor of a student, which refinancing or prepayment occurs within eighteen months of the date such loan was made.

69.     Mass. G. L., ch. 140, § 100, "Small Loan — Interest Rates," provides:

As used in this section the term "licensee" shall mean all persons licensed under sections ninety–six to one hundred and thirteen, inclusive.

The small loans regulatory board shall investigate from time to time the economic conditions and other factors relating to and affecting the business of making loans under sections ninety–six to one hundred and thirteen, inclusive, and shall ascertain all pertinent facts necessary to determine what maximum rate of charge should be permitted. Upon the basis of such ascertained facts, the board shall determine and establish by regulation or order a maximum rate of charge in connection with such loans which will induce efficiently managed commercial capital to be invested in such business in sufficient amounts to make available adequate credit facilities to individuals seeking such loans at reasonable rates, and which will afford those engaged in such business a fair and reasonable return upon the assets. Such maximum rate of charge established by the board may be the aggregate of two or more different maximum rates applicable to different portions of the unpaid principal balance, so that as the size of the loan or the unpaid principal balance increases the aggregate rate decreases. The board may reestablish the maximum monthly rate of charge from time to time on the basis of changed conditions and facts. When the board establishes a maximum rate of charge it shall also by order permit licensees to precompute the monthly rate of charge contracted for on scheduled unpaid principal balances of loans contracted to be repaid in substantially equal and consecutive monthly installments of principal and charges combined with such installments applied to the unpaid balance of principal and the precomputed charge combined, subject to such provisions as the board shall by order prescribe for a refund or credit in the event of prepayment and for extension and default charges in the event of an extension or default. Such refund or credit shall be computed on a

method which is at least as favorable to the borrower as the actuarial method, so–called. If the prepayment is made other than on an installment due date, it shall be deemed to have been made on the first installment due date if the payment is before that date, and in any other case it shall be deemed to have been made on the next preceding or next succeeding installment due date, whichever is nearer to the date of prepayment. Where the amount of the credit for anticipation of payment is less than one dollar, no refund need be made. The details of application and the rules for a fraction of a month or partial prepayments shall be subject to the order of the board.

Before establishing or reestablishing the maximum rate of charge, the board shall give reasonable notice by mail of its intention to all licensees and shall give such licensees an opportunity to be heard thereon and to introduce evidence with respect thereto. Any order which the board may make establishing or reestablishing the maximum rate of charge after such hearing shall contain the effective date thereof, which shall be not less than sixty days after notice of the establishing of such new rates as given by mail to each licensee. An order of the board establishing or reestablishing the maximum rate of charge shall not apply to loans made prior to its effective date. Within the authority conferred by this section, the board shall be subject to all pertinent provisions of chapter thirty A.

The total amount to be collected on any loan by a licensee for interest, expenses and other considerations shall not, in the aggregate, exceed an amount equivalent to the maximum monthly rate computed on unpaid principal balances of the amount actually received by the borrower except that the lawful fees actually paid out by the lender to a public officer for filing, recording, releasing or discharging any instrument securing the loan may be charged to and collected from the borrower when the loan is made or at any time thereafter and may be collected in such manner as is authorized by the board in connection with loans on which charges are precomputed as heretofore provided, but such interest shall not exceed twelve per cent per annum or the original rate of interest on the note evidencing the loan, whichever is less, after the termination of one year after maturity of the loan. No licensee shall wilfully permit any person, or any husband and wife jointly or severally, to be obligated, either directly or contingently to such licensee, under more than one contract of loan at the same time for the purpose of obtaining a higher rate of charge than would otherwise be permitted by this section on a single loan contract. No licensee or company or association to which sections ninety–six to one hundred and thirteen, inclusive, apply shall charge or receive upon any loans more than the maximum rate of charge permitted by this section. No charge, bonus, fee, expense or demand of any nature whatsoever, except as herein provided, shall be made upon loans to which said sections relate; provided, however, that a licensee may, if the loan agreement so provides, assess and collect a charge, not to exceed ten dollars, for any check, draft or order for the payment of money submitted in accordance with said agreement which is returned unpaid or not honored by a bank or other depository.

70.    209 C.M.R. 26.01 provides:

We hereby promulgate the following order:

    (1) All persons subject, in whole or in part, to the provisions of M.G.L. c. 140, §§ 96 through 113, may charge, contract for, and receive the following maximum interest charges for loans not in excess of $6,000:

        (a) 23% per annum of the unpaid balances of the amount financed calculated according to the actuarial method plus an administrative fee of $20 upon the

granting of a loan. An administrative fee is not permitted to be assessed to a borrower more than once during any 12 month period. . . .

(2)  Such maximum interest charges shall not exceed 6% per annum after the termination of one year after maturity of the loan.

(3) Interest charges shall be computed on the actual unpaid principal balances for the actual time outstanding or may be pre-computed as authorized by this order. . . .

71.    Mass. G. L., Ch. 140, § 103, "Small Loan — Penalties," provides:

Whoever, being duly licensed as provided in section ninety–six, violates any provision of sections ninety–seven, ninety–eight, one hundred and one, one hundred and two, one hundred and four or one hundred and nine, or any regulation, rule or order made by the commissioner under sections ninety–seven or one hundred and six, shall be punished by a fine of not more than five hundred dollars, and his license may be suspended or revoked by the commissioner.

Whoever, being so licensed, violates the provisions of section one hundred shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than one year, or both, and his license may be suspended or revoked by the commissioner. Any loan made by any person so licensed in violation of said section one hundred may be declared void by the supreme judicial or superior court in equity upon petition by the person to whom the loan was made.

72.    Mass. G. L., Ch. 140, § 110, "Small Loan — Penalty for Unlicensed Operation,"

provides:

Whoever, not being duly licensed as provided in section ninety–six, on his own account or on account of any other person not so licensed, engages in or carries on, directly or indirectly, either separately or in connection with or as a part of any other business, the business of making loans or buying notes or furnishing endorsements or guarantees, to which sections ninety–six to one hundred and eleven, inclusive, apply, shall be punished by imprisonment in the state prison for not more than ten years or in a jail or house of correction for not more than two and one half years, or by a fine of not more than ten thousand dollars, or by both such fine and imprisonment. ***Any loan made or note purchased or endorsement or guarantee furnished by an unlicensed person in violation of said sections shall be void.*** In any judicial proceedings under said sections the fact that the defendant has made or assisted in the making of two or more loans of six thousand dollars or less, upon which there has directly or indirectly been paid or charged, for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment or other expenses, a sum which exceeds in the aggregate an amount equivalent to twelve per cent per annum upon the amount actually received by the borrower, whether such sum has been paid to or charged by the defendant or paid to or charged by any other person, shall be prima facie evidence that the defendant has engaged in and carried on the business of making loans to which sections ninety–six to one hundred and twelve, inclusive, apply.  (Emphasis added)

73.    Mass. G. L., Ch. 140, § 106, "Small Loan — Enforcement," provides:

If a greater rate of interest or amount for expenses than is allowed under sections ninety–six to one hundred and eleven, inclusive, has been paid on any loan to which said sections apply, the person who paid it may file a complaint with the commissioner, who may, after a hearing, order such excess amounts refunded, or may make such other order as he may deem necessary. The filing of the complaint and the decision of the commissioner shall not affect the right of the complainant under section one hundred and three, who may, in an action of contract or suit in equity, recover back the amount of the unlawful interest or expenses, with twice the legal costs, if such action or suit is brought within two years after the time of payment.

74.    The requirement that small loan lenders be licensed applies to both interstate and intrastate lending activity.

75.    A loan is deemed to be made within the Commonwealth of Massachusetts when an application is made by any person within the Commonwealth and the money is advanced.

## COUNT I  – MASS. G. L., CH. 140, § 96 *et seq.*

76.    Plaintiff incorporates paragraphs 1-75.

77.    Defendants' unlicensed collection of usurious interest from Massachusetts consumers was, and remains, a violation of Massachusetts law.

78.    Because the loans made to Plaintiff violated the rate limits set by Massachusetts law, they are void, and the borrowers are entitled to recover back the unlawful interest, being the difference between the 12% allowed an unlicensed lender and the amounts actually charged.

## CLASS ALLEGATIONS

79.    Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(2) and (b)(3).

80.    The class consists of (a) all individuals with Massachusetts addresses (b) to whom a loan was made in the name of "Green Arrow Solutions" or "Green Arrow Loans" at more than 20% interest (all of its loans qualify) (c) where the loan or a payment thereon was made on or after a date four years (Mass. G. L., Ch. 260, § 5A) prior to the filing of this action.

81.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

82.    The class is so numerous that joinder of all members is not practicable. On

information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

83.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

84.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

85.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

86.    Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

87.    The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all excess interest  collected by Defendants.

88.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights.

    c.    Persons borrowing loans at over 700% are unlikely to be able to enforce their rights individually.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.    A declaration that the loans are void and need not be repaid;

    ii.    Restitution of excess interest paid or collected under the loans;

    iii.    Double costs; and

    iv.    Such other or further relief as is appropriate.

## COUNT II – MASS. G. L., CH. 93A, §§ 2, 9

89.    Plaintiff incorporates paragraphs 1-75.

90.    Although none of the Defendants (i) maintain a place of business within

Massachusetts, or (ii) keep assets in the commonwealth, Plaintiff, through counsel, nevertheless sent

Defendants a written demand for relief pursuant to Chapter 93A.

91.    Defendants did not respond to Plaintiff's demand for relief.

92.    Mass. G. L., Ch. 93A, § 2, "Unfair Methods of Competition or Deceptive Acts or

Practices," provides:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of
> any trade or commerce are hereby declared unlawful.

> (b) It is the intent of the legislature that in construing paragraph (a) of this section in actions
> brought under sections four, nine and eleven, the courts will be guided by the interpretations
> given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the
> Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended. . . .

93.    As detailed herein, the conduct of a business involving the systematic making and

marketing of loans to Massachusetts residents at more than sixty times the maximum rate permitted

to an unlicensed lender is an unfair method of competition and an unfair practice.

94.    Mass. G. L., Ch. 93A, § 9, "Civil Remedies of Consumers; Class Actions; Demand

for Relief; Award of Costs and Attorney's Fees; Suspension of Proceedings Pending Administrative

Action," provides:

> (1) Any person, other than a person entitled to bring action under section eleven of this
> chapter, who has been injured by another person's use or employment of any method, act or
> practice declared to be unlawful by section two or any rule or regulation issued thereunder . .
> . may bring an action in the superior court . . . whether by way of original complaint,
> counterclaim, cross–claim or third party action, for damages and such equitable relief,
> including an injunction, as the court deems to be necessary and proper. . . .

> (3) At least thirty days prior to the filing of any such action, a written demand for relief,
> identifying the claimant and reasonably describing the unfair or deceptive act or practice
> relied upon and the injury suffered, shall be mailed or delivered to any prospective
> respondent. Any person receiving such a demand for relief who, within thirty days of the
> mailing or delivery of the demand for relief, makes a written tender of settlement which is
> rejected by the claimant may, in any subsequent action, file the written tender and an
> affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the
> court finds that the relief tendered was reasonable in relation to the injury actually suffered

by the petitioner. In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty–five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper. The demand requirements of this paragraph shall not apply if the claim is asserted by way of counterclaim or cross–claim, or if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section. . . .

(4) If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action; provided, however, the court shall deny recovery of attorney's fees and costs which are incurred after the rejection of a reasonable written offer of settlement made within thirty days of the mailing or delivery of the written demand for relief required by this section. . . .

## CLASS ALLEGATIONS

95.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(2) and (b)(3).

96.     The class consists of (a) all individuals with Massachusetts addresses (b) to whom a loan was made in the name of "Green Arrow Solutions" or "Green Arrow Loans" at more than 20% interest (all of its loans qualify) (c) where the loan or a payment thereon was made on or after a date four years (Mass. G. L., Ch. 260, § 5A) prior to the filing of this action.

97.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

98.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

99.     There are questions of law and fact common to the class members, which common

questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

100.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

101.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

102.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible.

      b.     Members of the class are likely to be unaware of their rights.

      c.     Persons borrowing loans at over 700% are unlikely to be able to enforce their rights individually.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.     A declaration that the loans are void and need not be repaid;

      ii.     Statutory damages;

      iii.     Treble damages;

      iv.     Attorney's fees, litigation expenses and costs; and

      v.     Such other or further relief as is appropriate.

## COUNT III – RICO

103.     Plaintiff incorporates paragraphs 1-75.

104.     This claim is against Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw, and Greg Jones, who are the RICO "persons."

105.     All loans made in the name of "Green Arrow Solutions" or "Green Arrow Loans" to Massachusetts residents are (a) unenforceable under Massachusetts law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with

the business of lending money at a rate usurious under Massachusetts law, where (c) the usurious rate is at least twice the enforceable rate (12%).

106.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

107.    "Green Arrow Solutions" or "Green Arrow Loans" is an enterprise affecting interstate commerce, as that term is defined in 18 U.S.C. § 1961(4), in that it is located outside of Massachusetts and makes loans to Massachusetts residents via the Internet.

108.    Defendants Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw; and Greg Jones are each associated with this enterprise.

109.    Defendants Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw; and Greg Jones each conducted or participated in the conduct of the affairs of "Green Arrow Solutions" or "Green Arrow Loans" through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

110.    Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

111.    Plaintiff brings this claim on behalf of a class.

112.    The class consists of (a) all individuals with Massachusetts addresses (b) to whom a loan was made in the name of "Green Arrow Solutions" or "Green Arrow Loans" at more than 20% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

113.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

114.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a.    Whether the loans at issue are "unlawful debts" as defined in RICO.

-17-

b.   Whether "Green Arrow Solutions" or "Green Arrow Loans" is an "enterprise."

c.   Whether Defendants Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw, and Greg Jones are each associated with "Green Arrow Solutions" or "Green Arrow Loans."

d.   Whether Defendants Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw, and Greg Jones each conducted or participated in the affairs of "Green Arrow Solutions" or "Green Arrow Loans" through a pattern of making and collecting unlawful loans.

115.   Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

116.   Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

117.   A class action is superior for the fair and efficient adjudication of this matter, in that:

a.   Individual actions are not economically feasible.

b.   Members of the class are likely to be unaware of their rights.

c.   Persons borrowing loans at over 700% are unlikely to be able to enforce their rights individually.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i.   Treble damages;

ii.   Attorney's fees, litigation expenses and costs of suit; and

iii.   Such other or further relief as the Court deems proper.

*/s/ Heather Kolbus*
Heather Kolbus

-18-

Heather Kolbus *pro hac vice*
Matthew J. Goldstein *pro hac vice*
**EDELMAN, COMBS, LATTURNER**
    **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com


Christopher M. Lefebvre
P.O. Box 479
Two Dexter Street
Pawtucket, Rhode Island 02862
(401) 728-6060
(401) 728-6534 (FAX)
Chris@lefebvrelaw.com

## JURY DEMAND

Plaintiff demands trial by jury.

_/s/  Heather Kolbus_
Heather Kolbus

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.


*/s/ Heather Kolbus*
Heather Kolbus

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very  relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.


*/s/ Heather Kolbus*
Heather Kolbus

-22-

## CERTIFICATE OF SERVICE

I, Heather Kolbus, hereby certify that on Tuesday, October 18, 2022, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and sent to the following parties in the manner described below.

Via Email
Saba Bazzazieh
Nicole St. Germain
ROSETTE, LLP
1100 H Street NW Suite 820
Washington, D.C. 20005
sbazzazieh@rosettelaw.com
Nstgermain@rosettelaw.com

*Counsel for Defendant Green Arrow Solutions*

Via Email
Patrick McAndrews
Spencer Fane LLP
pmcandrews@spencerfane.com

*Counsel for Defendants Integra Financial Solutions, LLC,*
*Nevada Impact Management, LLC, Dan Jones and*
*Greg Shaw*

*/s/ Heather Kolbus*
Heather Kobus

Heather Kolbus *pro hac vice*
Matthew J. Goldstein *pro hac vice*
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

Christopher M. Lefebvre
P.O. Box 479
Two Dexter Street

Pawtucket, Rhode Island 02862
(401) 728-6060
(401) 728-6534 (FAX)
Chris@lefebvrelaw.com